JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

| | |
|---|---|
| CASE NO.: CV 11-10424 SJO (AGRx) | DATE: May 29, 2012 |
| TITLE: Directors of the Motion Picture Industry Pension Plan, et al. v. Marigold Productions, LLC | |

========================================================================
**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz
Courtroom Clerk

Not Present
Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF(S):**

Not Present

**COUNSEL PRESENT FOR DEFENDANT(S):**

Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL ARBITRATION** [Docket No. 10]; **GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** [Docket No. 11]; **AND DENYING DEFENDANT'S MOTION FOR SANCTIONS** [Docket No. 31].

These matters are before the Court on Plaintiffs Directors of the Motion Picture Industry Pension Plan and Directors of the Motion Picture Industry Health Plan's ("Plaintiffs") Motion to Compel Arbitration of the "Allocation Claim" ("Motion to Compel"), filed March 13, 2012, and Defendant Marigold Productions, LLC's ("Defendant") Motion to Dismiss ("Motion to Dismiss"), filed March 14, 2012. Defendant filed an Opposition to the Motion to Compel on March 20, 2012, to which Plaintiffs replied on April 9, 2012. Plaintiffs filed an Opposition to the Motion to Dismiss on March 28, 2012, to which Defendant replied on April 9, 2012. Defendant also filed a Motion for Rule 11 Sanctions ("Motion for Sanctions") on April 30, 2012. Plaintiffs filed an Opposition to the Motion for Sanctions on May 14, 2012, to which Defendant replied on May 21, 2012. The Court found the Motion to Compel and Motion to Dismiss suitable for disposition without oral argument and vacated the hearings set for April 23, 2012. The Court also finds the Motion for Sanctions suitable for disposition without oral argument and vacates the hearing set for June 18, 2012. *See* Fed. R. Civ. P. 78(b). For the following reasons, Plaintiffs' Motion to Compel and Defendant's Motion to Dismiss are **GRANTED IN PART** and **DENIED IN PART**. Defendant's Motion for Sanctions is **DENIED**.

I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are the trustees of two employee welfare benefit plans, the Motion Picture Industry Pension Plan and the Motion Picture Industry Health Plan (the "Plans"). (Compl. ¶ 4, ECF No. 1.) Defendant is a motion picture production company obligated to make contributions to the Plans for the benefit of employees involved in the production of a motion picture, "Drowning Mona." (Mot. to Dismiss 2.) The Plans were created pursuant to collective bargaining agreements entered into between the International Alliance of Theatrical Stage Employees ("IATSE") and motion

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

**CASE NO.:** CV 11-10424 SJO (AGRx)      **DATE:** May 29, 2012

picture and television producers in one instance (the "IATSE Basic Agreement"), and the International Brotherhood of Teamsters Studio Transportation Drivers Local #399 ("Local 399") and motion picture and television producers in another instance (the "Local 399 Agreement"). (Compl. ¶¶ 4, 5.) In 1999, Defendant became a signatory to the two collective bargaining agreements and agreed to contribute to the Plans. (Evidence in Supp. of Pls.' Mot. to Compel Tab B ("Gordon Decl.") Exs. 6-9.)

Pursuant to the Motion Picture Industry Health Plan Agreement and Declaration of Trust (Trust Agreement), in the event an employer fails to make the required allocation to the Plans, the Directors (Plaintiffs) are entitled to take any action necessary to enforce the provisions of the [Trust] Agreement, including but not limited to the right to sue any Employer in any court of competent jurisdiction." (Gordon Decl. Ex. 1 ("Health Plan Trust Agreement"), § 5c.) Pursuant to the collective bargaining agreements, "[i]f the Health Plan contends that such allocation is not reasonable, then such claim shall be submitted to arbitration."

In 2007, Plaintiffs employed forensic accountants to review Defendant's records in order to confirm the accuracy of the contributions Defendant made to the Plans from the period of inception through June 30, 2005. (Mot. to Compel 5; Gordon Decl. Ex. 10.) The audit revealed a possibility that Defendant had not made a reasonable allocation to the Plans. (Mot. to Compel 5.) As required by the collective bargaining agreements, Plaintiffs attempted to submit to arbitration the issue as to the reasonableness of the allocations made by Defendant to the Plans (the "Allocation Claim"), but only the issue as to reasonableness, and not other issues such as timeliness of the dispute and remedies. Defendant refused to arbitrate. (Compl. ¶ 14.) The basis of Defendant's refusal to submit the Allocation Claim to arbitration was that Plaintiffs were attempting to submit to arbitration only the question of whether the allocations were reasonable, but not any other issues such as timeliness, remedies, and any other issues that may arise. (Compl. Ex. A; Mot. to Dismiss 5.)

On December 16, 2011, Plaintiffs filed a Complaint in federal court, alleging breach of the collective bargaining agreements under the Employee Retirement Income Security Act of 1974 and the Labor Management Relations Act. On March 13, 2012, Plaintiffs filed the instant motion to compel arbitration of the Allocation Claim only. Shortly thereafter, Defendant moved to dismiss the entire action, arguing that either all issues relating to the Allocation Claim are to be submitted to arbitration or that Plaintiffs' claim is time-barred. On April 30, 2012, Defendant also moved for sanctions against Plaintiffs' attorneys pursuant to Federal Rule of Civil Procedure 11.

II.     DISCUSSION

       A.     Legal Standard

In a series of cases referred to as the Steelworkers Trilogy, the Supreme Court established a presumption of arbitrability where a contract contains an arbitration clause. *See United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960) ("An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that

Case 2:11-cv-10424-SJO-AGR Document 38 Filed 05/29/12 Page 3 of 7 Page ID #:956

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: CV 11-10424 SJO (AGRx)        DATE: May 29, 2012

the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."). However, in *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364 (1984), the Supreme Court held that "the presumption of arbitrability is not a proper rule of construction in determining whether arbitration agreements between the union and the employer apply to disputes between trustees and employers, even if those disputes raise questions of interpretation under the collective[]bargaining agreements." *Id.*, at 372. Instead, the court must examine the relevant collective bargaining agreements and trust documents to determine the existence of an "intent on the part of the parties to require arbitration of disputes between the trustees and the employers." *Id.*

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 (2006), *et seq.*, alternative dispute resolution outside the courtroom is encouraged. *Schoenduve Corp. v. Lucent Techs., Inc.*, 442 F.3d 727, 730 (9th Cir. 2006). Federal courts are required to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). "[A] district court must issue an order compelling arbitration if the following two-pronged test is satisfied: (1) a valid agreement to arbitrate exists; and (2) that agreement encompasses the dispute at issue." *United Computer Sys., Inc. v. AT&T Corp.*, 298 F.3d 756, 766 (9th Cir. 2002). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000). In interpreting the validity and scope of an arbitration agreement, courts apply state law principles of contract formation and interpretation. *See Wolsey Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1210 (9th Cir. 1998).

  B. <u>Arbitration Agreement</u>

Pursuant to Article XXVIII of the IATSE Basic Agreement and Article 21 of the Local 399 Agreement, the employer is required to make a "reasonable allocation" of payments received from various distributors to the Plans.[1] (Evidence in Supp. of Pls.' Mot. to Compel Tab D ("Miller Decl.") Ex. 1 ("IATSE Basic Agreement"), at 127; Tab E ("Reed Decl.") Ex. 12 ("Local 399 Agreement"), at 197.) The Allocation Provision in both agreements also contains an arbitration clause that states, "If the Health Plan contends that such allocation is not reasonable, then such claim shall be submitted to arbitration." (IATSE Basic Agreement Art. XXVIII; Local 399 Agreement Art. 21.)

The collective bargaining agreements at issue here unequivocally state the intent of the parties to submit any disputes regarding the reasonableness of the allocation to arbitration. This the parties do not dispute. However, the parties do dispute the scope and terms of the arbitration agreement. Other than stating generally that the claim must be submitted to arbitration, the Allocation Provision does not specify the terms of arbitration and does not make reference to any other provision in the agreements. Plaintiffs argue that because the agreements do not set forth a procedure for selecting an arbitrator, the Court must designate one. Defendant argues that the arbitration procedure detailed in Article XXXII of the IATSE Basic Agreement should be

---

 [1] For convenience, the Court will refer to Article XXVIII(b)(6) in the IATSE Basic Agreement and Article 21(b)(6) of the Local 399 Agreement as the "Allocation Provision."

**JS-6**

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** CV 11-10424 SJO (AGRx)    **DATE:** May 29, 2012

incorporated by inference, and if not, the arbitration clause contained in the Allocation Provision is unenforceable because it does not prescribe essential arbitral terms. To assess the merits of this dispute, it is important to review the collective bargaining agreements in some detail.

    1.    <u>Grievance and Arbitration Procedure</u>

Article XXXII of the IATSE Basic Agreement, entitled "Grievance and Arbitration Procedure," provides step-by-step guidance by which the "aggrieved party" is to submit his grievances to arbitration. The provision provides:

> In the event of any dispute between the Local Union or any of the persons subject to this Agreement and the Producer **with regard to wage scales, hours of employment or working conditions** or with regard to the interpretation of this Agreement **concerning such provisions**, the procedure . . . shall be as follows . . . .

(IATSE Basic Agreement Article XXXII (emphases added).) The provision later provides that "[f]or the purpose of this Article, 'aggrieved party' shall mean the Producer or the Union acting on its own behalf or on the behalf of an employee covered by this Agreement."

It is clear from the plain reading of the text that the purpose of this provision was to provide an arbitration procedure for labor disputes, and the provision is expressly limited to disputes between the union and employers. Defendant argues that it is illogical to conclude that the parties to the collective bargaining agreement did not intend to "borrow the terms of the [arbitration] procedure set forth a short distance away in the same collective bargaining agreement." (Mot. to Dismiss 12.) Whether the Grievance and Arbitration Procedure follows directly after the Allocation Provision or four articles later, nothing in the IATSE Basic Agreement suggests (and Defendant has not shown) that the grievance and arbitration procedure laid out in Article XXXII applies to anything but disputes over wage scales, hours of employment, working conditions, or the interpretation of such provisions.[2]

Furthermore, Article XX of the IATSE Basic Agreement regarding subcontracting also contains an arbitration clause. (Miller Decl. Ex. 2, at 162.) There, the provision expressly states that the parties are to submit the dispute to arbitration according to the procedure set forth in Article XXXII of the agreement. (Miller Decl. Ex. 2, at 164.) Thus, it appears that where the parties intended to incorporate the arbitration procedure set forth in Article XXXII, the IATSE Basic Agreement expressly provides for it.

---

    [2] Defendant's argument regarding textual proximity is additionally flawed when applied to the Local 399 Agreement. In the Local 399 Agreement, a grievance and arbitration procedure is set forth in Article 7, while the Allocation Provision follows fourteen articles later in Article 21. (*See* Local 399 Agreement.)

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | |
|---|---|
| **CASE NO.:** CV 11-10424 SJO (AGRx) | **DATE:** May 29, 2012 |

      2.     <u>Essential Terms</u>

Defendant opines that if Article XXXII is not incorporated into the Allocation Provision by inference, then the arbitration clause contained in the Allocation Provision is unenforceable because there was no agreement as to the essential terms. (Mot. to Dismiss 14-15.) Defendant argues that the one-sentence arbitration clause does not prescribe procedural rules for the resolution of disputes, including whether an arbitration award is binding or non-binding, the time period or procedure for filing claims, the procedures to be used in an arbitration hearing, the scope of the arbitrator's power, and the arbitrator's authority for issuing remedies. (Mot. to Dismiss 12.)

The terms of the collective bargaining agreements involve interstate commerce, implicating the Federal Arbitration Act ("FAA"). Section 2 of the FAA provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The FAA also provides the terms of arbitration for those instances in which the agreement is silent. Pursuant to 9 U.S.C. § 5, if no method of naming an arbitrator is provided in the agreement, "the court shall designate and appoint an arbitrator . . . as the case may require, who shall act under the said agreement with the same force and effect as if he . . . had been specifically named therein." *Id.* § 5. Arbitrators are not only given the power to fashion a remedy, but they are given wide latitude to do so in the absence of restrictive language. *See United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960) ("When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies.").

Defendant fails to point to any binding authority in support of its contention that the agreement to arbitrate the reasonableness of the allocation is unenforceable for failure to include essential terms. Here, the collective bargaining agreements specifically state that the claim "shall be submitted to arbitration." The union and the producers that entered into the collective bargaining agreements were undoubtedly sophisticated parties that understood the nature of their agreements. Defendant, as a signatory to those agreements, agreed to be bound by them. (See Gordon Decl. Exs. 6 ("Agreement of Consent"), 7 ("Trust Acceptance"), 8 ("'Drowning Mona' Memorandum Agreement"), 9 ("Studio Transportation Drivers, Local 399 Trust Acceptance").) Where the specific arbitral terms are missing, the FAA provides gap-filling terms and guidance as to how the arbitrator is to proceed. Additionally, the trustees of the Plans were given the right to "take **any action necessary** to enforce the provisions of the [Trust] Agreement, including **but not limited to** the right to sue any Employer in any court of competent jurisdiction." (Gordon Decl. Ex. 1 ("Health Plan Trust Agreement"), § 5c (emphases added).) As such, the Court is satisfied that a valid agreement to arbitrate exists.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | |
|---|---|
| CASE NO.: CV 11-10424 SJO (AGRx) | DATE: May 29, 2012 |

### 3. Scope of the Agreement

Plaintiffs argue that use of the word "claim" in the arbitration clause (singular as opposed to plural) requires the parties to submit to the arbitrator only the issue as to what is a reasonable contribution, and then the Court must determine the timeliness of Plaintiffs' dispute and appropriate remedies. However, Plaintiffs do not cite any applicable law for the proposition that issues regarding timing and remedies should be separated from the substantive issue regarding reasonableness.

According to the Supreme Court, once the court determines a valid arbitration agreement exists, the arbitrator resolves any disputes regarding the terms of arbitration, including procedural questions. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) ("[P]rocedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide." (internal quotation marks omitted)); *Bealmer v. Texaco, Inc.*, 427 F.2d 885, 887 (9th Cir. 1970) ("Since the parties were obligated to submit this dispute to arbitration, it is the arbitrator, and not the court, who is to decide questions of procedure."). Black's Law Dictionary defines "claim" as "[t]he aggregate of operative facts giving rise to a right enforceable by a court." Black's Law Dictionary (9th ed. 2009). Here, the aggregate of operative facts that would give rise to Defendant's liability is not just whether the allocation was reasonable, but includes whether Plaintiffs have timely filed their cause of action and the remedies to which they are entitled.

Accordingly, the Court compels arbitration of Plaintiffs' Allocation Claim in its entirety and dismisses this action without prejudice. Because the entire claim must be submitted to arbitration, the Court need not address Defendant's statute-of-limitations defense.

### C. Defendant's Motion for Sanctions

In its Motion for Sanctions, Defendant claims that Plaintiffs' attorneys violated Federal Rule of Civil Procedure 11 by filing a frivolous Complaint and Motion to Compel. (Mot. for Sanctions 2, ECF No. 31.) Defendant argues that the following assertions made by Plaintiffs' attorneys were frivolous: (1) that only the issue as to reasonableness of the allocation must be submitted to arbitration (Mot. for Sanctions 4-6); (2) that the Court is required to appoint an arbitrator (Mot. for Sanctions 6-9); and (3) that the issue as to reasonableness should be resolved prior to the threshold issue of timeliness (Mot. for Sanctions 9-10).

"Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 437 (9th Cir. 1996). "The court has significant discretion in determining what sanctions, if any, should be imposed for a violation." Committee Notes on Amendments to Federal Rules of Civil Procedure, 146 F.R.D. 401, 587 (1993). Under Rule 11, a court may impose sanctions upon attorneys for submitting papers to a court that are "frivolous, legally unreasonable, baseless, or filed for an improper purpose." *Simpson v. Lear Astronics Corp.*, 77 F.3d 1170, 1177 (9th Cir. 1996). "The word 'frivolous' . . . denote[s] a filing

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** CV 11-10424 SJO (AGRx)      **DATE:** May 29, 2012

that is both baseless and made without a reasonable and competent inquiry." *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990).

The assertions set forth by Plaintiffs' attorneys' do not rise to the level of sanctionable behavior. Defendant has not shown that a plausible, good faith argument cannot be made by a competent attorney in support of Plaintiffs' claims, especially in light of the fact that the Court has ruled in favor of Plaintiffs on at least one aspect of their Motion to Compel. Accordingly, Defendant's Motion for Sanctions pursuant to Rule 11 is **DENIED**.

III.     RULING

For the foregoing reasons, Plaintiffs' Motion to Compel and Defendant's Motion to Dismiss are **GRANTED IN PART AND DENIED IN PART** as follows:

1. Plaintiffs' Motion to Compel is **GRANTED**, but Plaintiffs' claim must be submitted to arbitration in its entirety.

2. Defendant's Motion to Dismiss is construed as a motion to compel arbitration and is **GRANTED** as such. However, the Court finds that the arbitration clause at issue is not subject to Article XXXII of the IATSE Basic Agreement or Article 7 of the Local 399 Agreement.

The parties are ORDERED to submit their dispute to arbitration before a mutually acceptable arbitrator. If within fourteen (14) days of the entry of this Order, the parties are unable to agree on a single arbitrator, the parties may petition the Court to appoint one.

Defendant's Motion for Sanctions is **DENIED**. This action is **DISMISSED WITHOUT PREJUDICE**.

IT IS SO ORDERED.